**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **A.O. and J.O.**

**No. 24-747** (Marshall County CC-25-2022-JA-55 and CC-25-2023-JA-23)

**MEMORANDUM DECISION**

Petitioner Mother J.N.[1] appeals the Circuit Court of Marshall County's June 4, 2024, order terminating her parental rights to A.O. and J.O., arguing that the circuit court erred in adjudicating A.O. and J.O. as abused and/or neglected children, denying her a post-dispositional improvement period, and terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In October 2022, the DHS filed an abuse and neglect petition alleging that the petitioner used excessive corporal punishment against her stepchild, M.O., as the child had extensive bruises covering her body and disclosed that the petitioner caused the injuries by hitting her with different objects, such as her hand, a belt, a hairbrush, and a ruler.[3] During the time of the abuse, the half-sibling to M.O. and the petitioner's biological child, A.O., lived in the same home, as shown by M.O.'s disclosure that her sister was present along with the petitioner's own admission that A.O. was "asleep in her bedroom" when abuse of M.O. occurred. As a result of M.O.'s injuries, the petitioner was arrested for child abuse resulting in injury in violation of West Virginia Code § 61-8D-3(a).[4]

---

[1] The petitioner appears by counsel Michael Baum. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Kevin Neiswonger appears as the children's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] Although the circuit court eventually terminated the petitioner's custodial rights to M.O., the petitioner raises no challenge to the court's ruling in this regard. As such, M.O. is not at issue in this appeal.

[4] West Virginia Code § 61-8D-3(a), in pertinent part, states that "[i]f a parent, guardian, [or] custodian, . . . abuses a child and by the abuse causes the child bodily injury . . . then the parent, guardian, [or] custodian, . . . is guilty of a felony."

1

During her incarceration, the petitioner gave birth to J.O., who is also M.O.'s half-sibling. The DHS amended the petition to include J.O. as an abused and/or neglected child, alleging that he was at risk due to the petitioner's prior abuse of her other children, although she had not yet been adjudicated for that conduct. After J.O.'s birth, the petitioner pled guilty to three counts of child abuse resulting in injury. In accordance with West Virginia Code § 61-8D-9,[5] the sentencing court found that "by virtue of this plea [the petitioner] is deemed to be an abusive custodian and/ or parent within the meaning of § 49-4-601 through § 49-4-610 to M.O., A.O., and J.O."

At the adjudicatory hearing in August 2023, the DHS presented evidence of the petitioner's guilty plea and the sentencing court's finding that the petitioner was an abusing parent to M.O., A.O., and J.O. The circuit court then adopted this finding, stating that because the petitioner "accepted a plea offer in the criminal case [it] trigger[ed] an admission in this case." No other evidence was presented. Upon consideration of the pleadings, the petitioner's guilty plea, and counsel's arguments, the circuit court found that M.O. was an abused and neglected child.[6] As a result of her adjudication, the petitioner indicated that she intended to relinquish her parental rights to A.O. and J.O.

One day prior to the dispositional hearing, the petitioner was released from incarceration and placed on supervised probation. At the dispositional hearing in November 2023, the petitioner declined to relinquish her parental rights to A.O and J.O. The DHS then presented testimony which detailed the extent of M.O.'s injuries as there were forty-two different marks and bruises across most of the child's body. The DHS also highlighted the petitioner's guilty plea and admitted into evidence various text messages in which the petitioner threatened M.O., called her a vulgar name, and blamed the child for "ruin[ing] [her] whole life." The petitioner continuously minimized her actions and attempted to justify her abusive conduct, stating that it was M.O.'s behaviors that caused her to "snap" and claiming that the abuse was an isolated incident. However, the circuit court found this testimony unpersuasive as the child's injuries and the petitioner's own text messages showed that she repeatedly abused M.O. The petitioner further stated that she sought mental health treatment while incarcerated, resulting in a diagnosis of depression and postpartum depression for which she was prescribed medication that helped with these issues. She testified that she learned positive coping skills and that she intended to continue treating her mental health issues now that she was released. Despite her guilty plea and remedial efforts, the court found that the petitioner still failed to acknowledge her role in M.O.'s abuse, as she "ha[d] clearly not accepted responsibility for her own actions." The court found that the petitioner's continued

---

[5] West Virginia Code § 61-8D-9, in pertinent part, states that,

"[i]n any case where a person is convicted of a felony offense against a child . . . the court shall, at the time of sentencing, find that the person is an abusing parent within the meaning of § 49-4-601 through § 49-4-610 of this code as to the child victim, and may find that the person is an abusing parent as to any child who resides in the same household as the victim."

[6] The petitioner included the adjudicatory order in the appendix record on appeal but failed to include the adjudicatory transcript.

"willingness to still blame a [then five]-year-old child" for her conduct was disturbing and that A.O. and J.O.'s welfare would be threatened if they were returned to the petitioner's care. Therefore, the circuit court terminated the petitioner's parental rights to A.O. and J.O., finding it in the children's best interests to do so.[7] The court also denied the petitioner's motion for a post-dispositional improvement period, which she had filed prior to the hearing. It is from this order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, the petitioner argues that the circuit court erred in finding that petitioner abused and/or neglected A.O. and J.O., as A.O. was not subject to excessive corporal punishment, and J.O. was not born at the time of the occurrence. More specifically, petitioner argues that the circuit court lacked subject matter jurisdiction by failing to make specific findings of abuse regarding these two children. We disagree. As we have recently held,

> [s]pecific findings of fact explaining how each child's health and welfare is being harmed or threatened by the abusive or neglectful conduct of the parties named in the petition are a statutory prerequisite for the circuit court to proceed to the dispositional phase, [but this is] not a requirement for establishing or maintaining subject matter jurisdiction.

Syl. Pt. 4, in part, *In re R.M.*, -- W. Va. --, 923 S.E.2d 352 (2025). Because the circuit court's subject matter jurisdiction is not contingent on these specific findings of fact, the petitioner is not entitled to relief upon this argument. Turning to the petitioner's argument that the circuit court failed to make specific findings of fact to support an adjudication of A.O. and J.O. as abused and/or neglected children, we note that this argument ignores the implications of the petitioner's guilty plea. Here, because the petitioner pled guilty to physically abusing M.O., the sentencing court correctly found that the petitioner was an abusing parent of M.O., A.O., and J.O., as all three children were abused children. The circuit court specifically found that such guilty plea triggered admissions of abuse in these proceedings, which led the court to adjudicate the petitioner as an abusive and/or neglectful parent in the instant proceedings. Further, the statutory definition of an "abused child" includes those children "whose health or welfare is being harmed or *threatened* by [a] parent . . . or custodian who . . . [inflicts] physical injury . . . upon the child or *another child in the home*." W. Va. Code § 49-1-201(1)(A) (emphasis added). We have explained that this language allows for the abuse to "be automatically imputed from one child to others in the home." *In re H.B.*, -- W. Va. --, 922 S.E.2d 350, 359 (2025). Here, A.O.'s welfare was threatened as she lived in the home with M.O. when the abuse occurred. Similarly, J.O.'s welfare was also threatened by the extensive abuse M.O. suffered despite him being born after the abuse occurred. *See In re H.B.*, No. 11-0651, 2011 WL 8193595, at *2 (W. Va. Sept. 13, 2011) (memorandum decision) (finding that because of the father's severe, repeated physical abuse of H.B.'s half-sibling, guilty plea to

---

[7] The father's parental rights were terminated. The petitioner's custodial rights to M.O. were terminated in a separate hearing. Additionally, M.O.'s mother's parental rights have been terminated. The permanency plan for the children is adoption by their respective placements.

such abuse, and continued denial of culpability, adjudication of H.B. was proper as "the risk to H.B. was too great," even though he was born after the abuse occurred). Therefore, both A.O. and J.O. were abused children, and we conclude that the circuit court made sufficient findings of fact to continue to proceed with disposition regarding A.O. and J.O.

Next, the petitioner argues that the circuit court erred in denying her a post-dispositional improvement period. We again disagree. To be granted an improvement period, a parent must first acknowledge the problem, as "[f]ailure to acknowledge the existence of the problem, . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, despite pleading guilty to abusing M.O., the petitioner repeatedly downplayed her actions and even blamed the child for her own abusive conduct. As a result, the circuit court found that the petitioner had failed to acknowledge her role in the abuse. This makes the problem wholly untreatable and a grant of an improvement period an exercise in futility at the expense of the children. Therefore, we conclude that the circuit court did not err in denying the petitioner's motion for a post-dispositional improvement period. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

Finally, the petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and/or neglect in the near future. We once more disagree. According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help." Here, although the petitioner stated that she was engaging in services to help treat her mental health, she still demonstrated that she had not taken responsibility for her actions. Rather, the petitioner tried to excuse the abuse, arguing that it was merely a one-time incident, which the circuit court found unpersuasive based on the evidence. We decline to disturb such a finding on appeal. *See Michael D.C. v. Wanda L.C.,* 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As stated above, the petitioner's continuous failure to acknowledge her role in the abuse makes the problem untreatable. Accordingly, the circuit court had sufficient evidence to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and/or neglect in the near future. Furthermore, based on this failure to acknowledge, the circuit court found that the welfare of A.O. and J.O would be threatened if they were returned to the petitioner's care, making termination of the petitioner's parental rights necessary. We have consistently held that circuit courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child"); Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114

4

(1980))). Therefore, we conclude that the circuit court did not err in terminating the petitioner's parental rights to A.O. and J.O.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 4, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III